Case number 22-3222, Jacqueline Williams et al, argument not to exceed fifteen minutes per side. Mr. Wysen, you may proceed for the appellant. Good morning. Good morning, your honors. Kent Reason on behalf of the appellants. I would like to set aside five minutes for rebuttal. This is a case in which my client was struck by a Pitt, Ohio truck when he was not on the roadway and was killed from that accident. The issue has been as to where that impact occurred. Our expert, Mr. Lipien, testified at the Dalbert hearing and through his deposition that the evidence established that the impact occurred off the roadway. Yeah, can I get you, I mean, so the expert's clearly an expert. I mean, he's clearly qualified and when you read the report, you can't doubt that he knows his trade. So that part I'm quite comfortable with. I still can't figure out how, is it Judge Knapp? Yeah, so I still can't figure out what the answer is to the point that, okay, fine, you've got a speed estimate, you've got this 230 feet estimate, you've got the side, it's sloping, so that explains where Mr. Williams ends up. But I can't understand how that tells you one to two feet to the right of the fog line and margin of error one to three feet. I mean, that's the part that I think he was asking about, the district court judge, and I still don't understand that part of the answer. I mean, the preliminaries all make sense, right? The Barsley factors, that all, that seems like classic expert stuff. But you have this, as the judge raised, this question of, this all turns on, did you go forward exactly? You know, it's one thing if you go forward exactly, it's quite another if you're, this lateral angle launch point, and I just can't, I can't figure out where the methodology is that satisfies Delbert, whatever you want to call it. And so that to me would be very helpful. Sure, I think the testimony is that, and we're really talking about the first 84 feet, or 28 yards, is what you're talking about. Because we have the contact, initial contact, and once there's initial contact, the body would rotate a little bit, within microseconds it becomes a maximum impact. Then after maximum impact, there will be some carry, then after the carry, there will be, he'll become airborne, okay? And our expert, I got all, you can do this if you want, but you've got 15 minutes. Okay. I think I was very clear, and I think the answer is very clear what the question was, and the answers were always totality, or my expertise. How do you, how do the clearly scientific mathematics stuff prove where he was on impact? That's the, what seems like the missing ingredient, but I'm trying to give you the chance to tell me why it's not missing. Well, I think if you use the affidavit that the defendants produced, which was Mr. Eubanks, Mr. Eubanks concedes that if the front of the truck struck my client in his upper torso, that the body would fly directly in a straight line, and so Mr. Eubanks has published a treatise, and he agrees with that. Now, he disagrees with whether the induced damage that is shown in the fender of the vehicle would make a difference or not. He says it does. My client says no. The impact was directly to the upper torso of his body, so therefore his center of mass would always go straight, would go in a straight line. Well, I thought he acknowledged that, well, I thought everybody acknowledged it was to the right, right, and that that was more of an angle. No? No. My expert's testimony is that he was hit in the center part of the truck by his upper torso, which caused him to go straight forward. As compared to if you move him over to more towards the tire, then of course there might be an angle at that point, but the upper torso of his body and all of his body came into the front part of the truck, which by definition would cause the body to go straight forward in a straight line for 84 feet. Then my expert explains after the 84 feet, then we see the slope of the road, we'll take it towards the right. So. Pardon me if this is a redundant question, because I might be asking kind of the same thing that Judge Sutton is, but I guess what I'm grappling with is what can you point to in the record that shows what Lippian's methodology was for ascertaining where he was at the moment he was hit? I get the whole going forward and then bending to the right and winding up in the ditch and how you kind of come to that, but the point at which he was hit, what is the methodology for saying that he was one to three feet to the left of the fog line, i.e. which would be in the lane of travel, versus one to three feet the other way? What's the methodology for that conclusion? The methodology is that since it's a true forward projection type of case, he would travel in a straight line. And so for that 28 feet. How do you prove it's forward as opposed to lateral? What's the proof of that? Again, citing you, Banks, and citing what our expert says, when your center of mass is struck in the major part of the structure of the truck, you are forced to go straight forward. In a straight line. Right. So I think I'm just asking the same question Judge Davis. That would be, let's just say hypothetically everyone agreed that he was hit in the middle of the road. In the middle of the road he goes exactly forward. There's not a lot of drama in the point that of course he was hit in the middle, he went forward, there's no slope, he ends up forward. What's so complicated about this case is it's not totally flat forward, right? Because there's the slope down. And so everything he does seems to have this question begging component of it, of whether he was hit in a way that went straight forward or went at an angle. I still can't for the life of me figure out what the evidence shows that he, why it shows he was straight forward as opposed to a little bit of an angle. Because that's everything in the case. Right. And our expert indicates that once the body disengages from the truck, it is going to go in a straight line. And so the issue of, they were asking about a calculation. There is no calculation to do what the lateral angle and the lateral impact that the judge was asking about. But the bottom line is once it. It's not possible that if the truck, I'm assuming the truck isn't perfectly. Is the truck perfectly flat all the way across? Yes. Where he was impacted is a very flat surface, yes. Completely flat or very flat? Tell me, I'm just trying to figure it out. Because you can understand why. Yes, it's a very flat surface. Okay. Because I'm just trying to, the intuition would be the truck is not 100% flat across. And if it's, everyone agrees the impact was not in the middle. So it leads to this possible intuition that if it's at an angle, that's what leads to the not projecting straight forward. I think the issue that people are suggesting that which causes it to go to an angle. Is what is called the induced damage. Which is the damage that we see to the adjacent fender. As compared to the contact damage. Our guy, our expert addresses the fact that the contact damage is where the body comes in contact with the vehicle. And that the induced damage is damage which is from the shock of the collision. And so once the body is impacted in the upper torso. And so therefore his center of mass or center of gravity, the strike is there above that. Then the body will go straight forward. And so he ends up landing two feet off the roadway. Straight forward from that point would mean he was off the roadway. I think we're all struggling with perhaps the way the district court opinion was written. It flows into this. But my reading of all three of the expert reports is that they all agree this is a forward projection trajectory case. That's correct. And no one disputes that. That's correct. But the question seems to be whether there has to be some sort of a lateral launch vector. Which was a clear emphasis of the district court. Or whether there was sufficient methodology in Mr. Lipien's report that explains. My look at it was that he talks about William's injury patterns, roadway evidence, forward projection trajectory. Explained the fact that he was not actually run over and helped with the location. What I'm struggling with is the margin of error. Because you've got the fog line is kind of a big important demarcation. And the question is whether he was on the roadside of that or on the shoulder side of that. Right. What is your response to concerns that the margin of error given may have created a difficulty with making that placement? I think that our expert indicates that there's no certainty as to exactly the distance we're talking about. But with one to three feet, it's still he's not on the fog line. And I would also indicate that their own expert, Mr. Conley, says that the body traveled 77 feet in a straight pattern. The difference is that Mr. Conley says is that he makes assumptions about where the vehicle was located at. I thought Judge Schranch was asking a different question. Which is the margin of error is one to three feet. And you say he's one to two feet to the right of the fog line. Why is that giving the jury a ground for ruling for you? Because if the margin of error contemplates being one to three feet. Three feet would get you into the, you understand the point, right? Or maybe I'm missing the point. My understanding of the point is, Your Honor, is that with one to three feet, it's one feet closer to the fog line. Another feet away from the fog line. It's not three feet. Why wouldn't it be either way? Why wouldn't margin of error be in either direction? Why would the margin of error only go in favor of your client? That seems strange. My understanding is what the expert was testifying about is it's two feet off the fog line. So you have a foot on either side and that's the margin where the body ended up hitting the ground. Okay. You'll get your rebuttal and let's hear from the other side. Thank you. Good morning, Your Honors. May it please the Court. Stephanie Hersberger on behalf of the Appalese Defendants, Mr. Seafin and Pitt, Ohio. I will jump right into answering the questions that Your Honors were asking counsel. First, their expert, Lippian, never actually said that Mr. Williams was hit in the center of the truck. All of the experts said it was two on the right side front of the truck, as shown by the photograph on page 27 of our brief. I don't think he was saying that. I think he was saying it was forward. It didn't matter, I think, is essentially what he was saying, that he was to the side. It wasn't going to make a difference. It was still going to be a forward. That's what I took him to be saying. Okay. So keep going. I just want to make sure we're on the same page. And make sure I'm clear also. All three agree. All three agree that it was a forward projection trajectory. That is not a dispute. Right? Yes, you're right, Your Honor. Okay. The difference is it can be a straightforward projection, but to what degree? Okay, because once it starts, it's going to go straight. So if you launch out straight ahead, it's going to go straight. But if you're launched out at an angle, it's going to go straight on that angle. So what the judge district court was concerned about was showing that crush factor on the front of the truck and where the landing was. What angle, how do you account for what angle he was projected from? It makes a huge difference, a few degrees one way or the other, whether he was on the shoulder of the road or in the lane. And let be untestified at his hearing, the judge gave him plenty of opportunities that it was essentially a straight line. And the reason he used essentially is because he was using that as a qualifier. It's not an absolute straight line, and he admitted it. And he recognized, he said during the hearing on page 4241 of the transcript, he recognized that because there could be a few variations in degrees. He did say the slope went off, but my concern about the district court's opinion is that it effectively says everything about this case is about this lateral launch vector. But that's not what any of the experts said. I'm struggling with the judge's concern and basis for saying that this was not an appropriate expert. When I look at the Russell and Connolly report, it seems to me they're all in agreement on the forward trajectory, but none of them, none of the three actually calculate a lateral launch angle. If I'm wrong, you tell me where in the report it is, but I don't see it. Your Honor, I will tell you first of all, they did consider that. They did it in a different way. They did the methodology where they did computer things, where they put the truck into the computer program with all of the measurements, and then Connolly took a mannequin that was 6'1", the same as Williams, and tested it in different places in front of the truck. The only place that he ended up up ahead on the shoulder was when it was in the right front and when he was in the travel lane. I think I'm on the same page. But was the theory at that point a different theory of landing and rolling, or was the theory at that point a different launch angle? There were two aspects. I think that the district court was concerned about the launch angle. No, no, no. Sorry. You were answering a question about this other expert, okay, your expert. And Judge Strange was saying, I thought everybody was in agreement, and I'm trying to figure out agreement about what. So this expert, when this expert said the person was hit to the left of the fog line, did they say that because the projection was straight and it was just a function of how much he rolled upon impact, or were they saying there was some form of not straight? And what was the reason for that? That's what I think we both are trying to figure out. Yes, the second part, that there was an angle. And that goes back to what we said. Proved by what, the impact of the truck? Yes, that you hit the right side. And first of all, the district court didn't even consider defendants experts because it's plaintiff's burden. But since you're asking the question, when Connolly did the test with this mannequin, it's a methodology. It's a recognized methodology, whether you agree with the results or not. He put a mannequin that was hit right in front of the center where the emblem is, and it went straight ahead. He put a mannequin closer, way out to the side, and it was run over by the tire. He put the mannequin where the crush was on the truck in this case, and it ended up where Mr. Williams ended up. And that was his methodology. The theory being a launch angle difference? Yes. Okay. Yes. But there's no count. My trouble is, the opinion says, you didn't calculate this lateral launch angle, so you don't have a good methodology. But you answered why Connolly's methodology was acceptable, because the angle was a part of his computer modeling. But that's exactly what Lippian testified. No. No, he didn't. He actually said he admitted to the judge that it's not possible to say that whether 0 degrees, 10, 15, 20. That's a different question. He did say that. But what he said was the angle that it flew off, my computer programming, my modeling, we've got the model, he's got the pictures in his report. Your position is he never in his testimony stated that those calculations were included in his computer modeling. Because I have a different memory. He said that it measured the crush, but he never looked at it. And he never took it into consideration. The crush is the part of the truck that juts out from the force being hit in the middle. Creates the angle. Well, creates the angle of the damage to the truck. I'm just struggling with... I have a greater question about the fog line than I do at all about this idea that you should have calculated lateral launch angle when none of these experts did that. So what makes that concern of the district court correct if none of these experts made that calculation, but it was a part of their analysis or their computer modeling? The judge used... He used words that I had to look up because obviously he had a background in physics and math, a strong background. But what he was actually, in layman's terms, asking, and this was an exhibit, is how someone can be launched straight forward along this fog line and then suddenly veer to the left. Whether you want to call it sudden veering, immediate veering. Lipien never measured where he landed. He measured down on the dirt where he... He says, oh, it was sloped. He measured down on the dirt up to the concrete, but he didn't measure where he landed. He kept saying, I considered all of that. But where? What methodology did he have? And it doesn't have to be a calculation per se, but what methodology did he use to determine the angle, if there was an angle, how much and how it impacts anything? None of those 11 or 12 methodologies that he utilized talks about that at all. And you think his summary explanation, after having worked his way through all of the information in the report, that was his anthropometry, the injury patterns, roadway evidence, consideration of forward projection trajectory patterns, and the fact that he was not actually run over. The damage patterns are what tell you, and the probable location of the impact was how he arrived at those. I understand that there's got to be reliability. My struggle is whether we as a court get to use our own knowledge to decide that there might be a better way to have done this when all of these three experts engage in comparable analyses and reference motion comparably. Why isn't that simply a question for the trier of fact? It's not, Your Honor. First of all, with due respect, the court shouldn't be considering defendant's experts at this stage. When there is a Daubert hearing, it's plaintiff's burden by the preponderance of the evidence. I agree with that. Yes. But if the accusation is you are unreliable because you did not state this angle and we look at the proposed expert reports of the defendants and those defendants did not do so either, I don't quite understand how that's a failure of methodology. Now, he may lose and he may have been incorrect, but my question gets back to this idea is what is the job of the trier of fact? What does the jury get to do versus what does the court get to decide I don't like that or you didn't do it this way, you didn't do it my way, so you don't even get to be put before the jury? The district court never said that he had to do it a particular way. He said at the end of this four-hour hearing, did you ever account for the angle? Is there any time during your testimony? Whatever methodology he wanted to use. The judge was saying that there's one way to do this, but obviously Connolly did it a different way. He used a computer simulation, which Lippian never did. That's how he did it. If there was another methodology that he could point to, it's not really the launch angle, but how did this body go in a straight line, hit, and then go like this? It belies Newton's basic physics, which I do remember vaguely from high school. So the court is there to say whether there's a reliable methodology. Whether you agree, there could be three different methodologies, Your Honor. If it's reliable, then it's for the jury to consider. Can I clarify one thing that Judge Strange asked counsel for the plaintiff? I want to make sure I'm understanding the answer because this is a little confusing to me about what error rates mean. So if someone says, it doesn't matter who, someone says, I think the body was struck one to two feet to the right of the fog line. So that's what they say. For sake of argument, they have a legitimate methodology for getting to that. And then they say the error rate is one to three feet. My first intuitive reaction is, wait, that doesn't tell you anything. But is it possible that that's really not what he said? What he was really saying, the error rate made it possible that he was one foot to the right of the fog line or three feet to the right of the fog line. Is that what he really meant? Your Honor, I'm not honestly sure what he meant by that. What do error rates mean in general? Because I would have thought they would go in both directions. It can be an error rate this way and an error rate that way. But I just don't know. Error rate? I don't remember reading about error rates. Error. Oh, error rate. I'm sorry, Your Honor. I'm sorry. I apologize. I misunderstood. Sorry. Common people separated by a common language. It sounds so similar. Error rate, yes. You know, that's one of the Daubert factors. But I don't want to hear anything else. I want to hear one thing. Someone says it's one to two feet to the right of the fog line. There's an error, E-R-R-O-R rate of one to three feet. Yes. Does that take you only more off the side of the road or does that take you more into the road? Does it do both? I think both. Is that the understanding? Do you think that's what Lippian meant? I don't know what Lippian meant, Your Honor, because honestly, I don't. You know, I read his... Why isn't that the simplest answer to the case? I don't know. My understanding was it could go either way and that was an additional problem that, you know, you could end up in the travel lane then. But I don't... The reason I didn't focus on it for preparing is the district court didn't really go through the four Daubert factors. He sort of looked at it as analytical gaps, which they have a lot of discretion to do it or look at the factors. So there was that discussion of the error rate, but there wasn't a lot of testimony on it. And my understanding was it could just go either way. So you could be farther from the fog line to the right or you could go back over into the left end of the travel lane. But that's my understanding, Your Honor. I don't know what Lippian actually meant. Your Honors, my time's about up. I would just say that, you know, the district courts do have broad discretion and being the gatekeeper for the methodology. Although Lippian cites too many methodologies, 11 to 12, 13, 14 of them. Not once during that hearing did he explain how any of them account for a body going... Whether you want to call it an angle, a launch vector or whatever, a body going straight forward along a fog line. Let me ask you about his testimony that he opined that the damage to the truck would have caused clockwise rotation along the Z axis rather than a lateral launch angle. So why isn't that explanation an appropriate methodology? That wasn't actually... That was a separate issue about the body rotating while it was on the truck. My understanding is not launching out. They were two separate issues. There was like another piece of the puzzle. Which is, I think the courts, the district court's whole problem with him is Lippian admitted what he does is he's putting a piece of a puzzle together and if there are pieces that don't fit, he just throws them out. And he doesn't really have a methodology that explains this. If he did, it would get to a jury and it would be up to the jury which of the experts to believe. Do you believe his methodology, their conclusions? But when you don't have an explanation, when your teacher at school, you have a math, you know, the final answer and says, show me your math, show me how you did that. Show me your work. Despite three or four hours, he didn't show his work. And that's why the district court did not abuse its discretion. Thank you. Mr. Regan, I see you had five minutes to rebuttal. You did use a little of that time before, so come up and... Again, Mr. Eubanks or Zaffer Davis says this. In the crash that issued in this case, Mr. Lippian's conclusion that the pedestrian slash truck collision resulted in the pedestrian departing at a heading of the impacting vehicle in a straight forward trajectory would be correct if all the pedestrians in Mr. Williams' body were struck by the front of the subject truck. That's what our expert testified about. That's what happened. His impact at his center of mass was more towards the solid structure of the truck as compared to the, as you get more towards the tire, it becomes more plastic and so therefore it will break. So where my client's body struck it, it struck it at the solid part of the truck, which then causes a forward projection by definition. Forward projection means that you go in a straight line. Why did he have to qualify it as essentially? What's that? Why did he have to qualify it as essentially and then not be able to talk about it? I think, Your Honor, he was being honest about it. He's saying it could go one or two degrees either way, but you're talking about 28 yards. We're talking about 28 yards. We're not talking to 230 yards. We're talking about 84 yards. I'm sorry. I'm sorry, 84 feet, 28 yards. When you're talking about 28 yards, a degree or two isn't going to take him off or put him back on the roadway. I don't know. I honestly don't know. Well, you know, he was questioning about that. I would have thought that the district court judge who cross-examined him pretty vigorously about that, there's no evidence that would put him back on the roadway. I think the point that Judge Strange makes is a very good point. All the experts are different about where he's standing at, how he's standing at, where the impact occurs. I mean, Mr. Russell would suggest that he was six or seven feet on the roadway. The other expert, Mr. Connelly, says, well, no, pretty much he traveled 77 feet straight, like the same thing our expert says. The only difference is he makes the assumption that your truck's going straight down the road, so therefore the impact's two or three feet within roadway. Bottom line, this all goes to the credibility of the weight. It should be for a jury to decide. I understand Judge Knapp is a very bright judge, and I think he's pretty confident that he didn't think highly of accident reconstructions. He makes it pretty clear on the record about that, that they're technicians. They're not technicians. To be honest, I've been doing this 35 years. Mr. Lipman's one of the best experts I've ever had. And tell us about the fog line. Is it your position that it's the margin of error? Here's the fog line. The margin of error begins with one feet and goes to three? Because you might, as a layperson, think that margin of error could go either side. What is it that tells us that the margin of error discussion here begins at the one foot and goes to three off the shoulder of the road as opposed to the other direction too? I think the conclusion is that if the interpretation that defense counsel was making, the judge would have ruled that way. Tell me, you said that's not what Mr. Lipman meant. Is there a good place to look to get a sense of that? I believe, again, it was addressed in a Dahlbert hearing. I don't remember whether it was addressed, well, his qualifications or his... It was not addressed in his deposition. So I know that it was addressed in... At the hearing? I'm sorry? In the hearing. In the hearing, I think he was pushed as to the issue of what the rate of error was. And my understanding has always been that where he impacted the roadway... Okay, your understanding is really helpful. Just tell me the best place to look for what he meant by error rate. Would be the Dahlbert hearing. Okay, great. We would ask that this is a case where it should be reverted back to the court so that a jury can decide these issues. It goes to the question of credibility and weight, and this court has had in the past, and has stated in the past, that rejection of expert testimony is the exception, not the rule. And this is clearly not the case that it should be the exception. All right, thank you, Your Honor. Thank you, both of you, for your helpful briefs and arguments, and as always, for answering our questions. We appreciate it. The case will be submitted, and the clerk may adjourn court.